NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3521
_____

MOON EXPRESS, INC.,
Appellant

v.

INTUITIVE MACHINES, LLC
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-16-cv-00344)
District Judge: Honorable Leonard P. Stark
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 9, 2019
Before: HARDIMAN, GREENAWAY, JR., and BIBAS, *Circuit Judges*.

(Filed: October 1, 2019)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

This case involves a dispute arising out of two contracts for the development of spacecraft to travel to and from the moon and the International Space Station. Moon Express, Inc. appeals the District Court's order denying its motion for a new trial after a jury verdict in favor of Intuitive Machines, LLC. For the reasons that follow, we will affirm.

$I^1$

In 2016, Moon Express and Intuitive Machines sued each other for breach of contract relating to a flight software contract and a terrestrial return vehicle contract. Under the first contract, Intuitive Machines agreed to develop and deliver flight software for Moon Express to use as part of a lunar lander. The vehicle contract called for Intuitive Machines to provide intellectual property necessary to build a small shuttle that would transport materials back to earth from the Space Station.

Neither contract was fully performed and the two companies pointed the finger at each other. The dispute went to trial and Intuitive Machines was vindicated in all respects, receiving a jury verdict of $1.857 million and Moon Express stock worth $2.25 million. In this appeal, Moon Express claims the evidence was insufficient to support the

---

[1] The District Court had diversity jurisdiction under 28 U.S.C. § 1332(a)(1). We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's denial of the motion for a new trial for abuse of discretion. *See, e.g.*, *Wagner by Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1017 (3d Cir. 1995).

jury's verdict that it breached both the software and vehicle contracts. Moon Express also claims the District Court erred in admitting evidence of settlement discussions and in permitting Intuitive Machines to receive consequential damages the contract forbade. We address each argument in turn.

A

A party seeking to overturn a jury verdict faces an uphill climb. Giving due deference to our jury system, we will uphold the verdict if it is rational. *See Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016). Our review of the record in this case leads us to the conclusion that plenty of evidence supported the jury's decisions that Moon Express breached both contracts, that it prevented Intuitive Machines from performing the software contract, and that any breach of the vehicle contract by Intuitive Machines was immaterial.

As for the software contract, Moon Express breached the contract and prevented Intuitive Machines from delivering software that worked on its test vehicle. The parties negotiated the terms of the software contract in a series of emails. Without a written and signed contract, the jury was charged with deciding which terms governed the contract.

Moon Express contends that, under the software contract, it was not obligated to provide the test vehicle. But the jury determined that Moon Express prevented Intuitive Machines from fulfilling its obligation. Implicit in this jury verdict is a finding that Intuitive Machines was obligated to test the software successfully on the test vehicle. And

3

Moon Express was obligated to deliver the test vehicle before Intuitive Machines could conduct that test.

But Moon Express never provided the vehicle necessary to conduct that test. Its founder, President, and CEO even testified that because they "didn't have the test vehicle completed . . . there was no way that this software could have been delivered." App. 1394. And it gave notice it would not make its second payment under Phase A without successfully completing this test. This evidence supports the conclusion that Moon Express prevented Intuitive Machines from performing a condition precedent to its entitlement to payment. *See Mobile Commc'ns Corp. of Am. v. MCI Commc'ns Corp*, 1985 WL 11574, at *4 (Del. Ch. Aug. 27, 1985). That is what the jury found here, so we will not disturb its verdict on this basis.[2]

As for the vehicle contract, Moon Express claims it was entitled to withhold payment because Intuitive Machines committed the first material breach. The jury agreed with Moon Express that Intuitive Machines breached the contract, but it deemed the breach immaterial. Moon Express cites three things Intuitive Machines failed to deliver on time as material breaches: certain intellectual property, an authorization to visit the Space Station, and FAA approval for its first flight. The verdict does not indicate which

---

[2] Moon Express's objections to the order and wording of the verdict form are unavailing because the District Court "adopted the identical language and order of the starting question . . . that [Moon Express] had at one point proposed." *Moon Express, Inc. v. Intuitive Machs., LLC*, 2018 WL 4972220, at *4 (D. Del. Oct. 15, 2018).

of these three constituted a breach, so we assume all three did as we examine whether the evidence supported the jury's finding of immateriality.

Regarding the delivery of intellectual property, numerous facts support a finding of immateriality. First, the vehicle contract required only the "conveyance of title," which occurred. App. 906. Second, a schedule to the contract stated "all [milestone] dates . . . are approximate and for planning purposes only." App. 922. Third, Moon Express stopped making monthly installment payments while the vehicle was still in development. Fourth, Moon Express did not request the intellectual property or assert that Intuitive Machines had failed to provide it until months after signing and the deadline for conveyance of title had passed. Finally, once Moon Express made the request, Intuitive Machines delivered a large number of "design documentation" files within days. App. 1369.

As for the transfer of Intuitive Machines's authorization to visit the Space Station, the following evidence supported the jury's finding of immateriality: transferring the agreement was not required by the vehicle contract (only *requesting* that the Station's governing body, the Center for Advancement of Science in Space (CASIS), transfer the agreement was); two of Moon Express's most senior officers knew that CASIS might not transfer the agreement even if requested, so they were preparing to get their own agreement if needed; and testimony by Intuitive Machines's President and CEO suggested he made reasonable efforts to obtain the transfer (albeit not within the ten days as required by the contract).

5

Finally, there was plenty of evidence that the breach was immaterial as to the Federal Aviation Administration license. The vehicle contract's target date for the first-flight license—which was "approximate and for planning purposes only," App. 922—was August 1, 2016 (months after Moon Express stopped paying Intuitive Machines). Intuitive Machines had completed two key steps toward obtaining the license, and Moon Express's President and CEO agreed that missing the deadline was "not a basis to call a [*sic*] breach of a contract." App. 1396.

In sum, we cannot know whether the jury found that Intuitive Machines breached the vehicle contract in each of the three respects alleged by Moon Express. But assuming breaches in all three respects, we agree with the District Court that none was "so fundamental . . . that the failure to perform that obligation defeat[ed] the *essential purpose* of the contract or [made] it impossible for [Moon Express] to perform under the contract." *Preferred Inv. Servs., Inc. v. T & H Bail Bonds, Inc.*, 2013 WL 3934992, at *11 (Del. Ch. July 24, 2013), *aff'd*, 108 A.3d 1225 (Del. 2015).

B

Moon Express also urges us to overturn the jury's verdict on the software contract because the District Court allowed prejudicial emails and text messages referring to a "software settlement" into evidence. Intuitive Machines responds that those communications were admissible because they went to the parties' negotiations and course of dealing, not to an impermissible purpose. *See* FED. R. EVID. 408 (Evidence of compromise offers and negotiations "is not admissible . . . either to prove or disprove the

validity or amount of disputed claim or to impeach by a prior inconsistent statement or a contradiction . . . . The court may admit this evidence for another purpose . . . ."). We agree with Intuitive Machines.

The challenged communications involved renegotiation of both the software and vehicle contracts following Moon Express's failure to pay two of its monthly installments under the software contract. The parties discussed Moon Express's next installment payment and amending the vehicle contract to "connect[]" them. App. 4278. And Intuitive Machines eventually accepted Moon Express's offer to "settle the flight software deal" for $500,000. App. 1365.

The District Court found that the challenged evidence would "be relevant to the jury understanding the nature of the dispute between the parties regarding contracts in this case and the parties' course of dealing." App. 1205.It reasonably concluded that the evidence would not be used improperly to prove the validity or amount in dispute of Intuitive Machine's claims or to impeach a prior inconsistent statement.

Even if the evidence was used for an improper purpose, Moon Express did not object to other evidence that referred to the same potential "settlement" from the same time as the challenged communications. *Id.* So the District Court properly ruled that Moon Express would not suffer prejudice from admitting the additional evidence referencing the same potential settlement. The District Court did not abuse its discretion in this regard.

C

Lastly, Moon Express argues the District Court erred in denying its motion for reconsideration because it was error to award Intuitive Machines $212,000 in "wind down" damages. It claims that, as a matter of law, those costs were consequential damages barred by the vehicle contract. *See* App. 919 (excluding "indirect, consequential, or other incidental damages," which "includes, but is not limited to, any damages arising from, or calculated by, the loss of business opportunity, loss of profit, loss of production, loss of data, loss of use of hardware, economic loss of use of software, indirect, special, or incidental damage"). We disagree.

We first note that the contract is silent as to whether the wind down costs were direct or consequential. Absent guidance from the contract, delineating consequential damages from direct damages becomes "context-specific" and sometimes difficult given "the amorphous state of the law and its confusing efforts to clearly [differentiate] general damages, on the one hand, and consequential or special damages on the other." *Pharm. Prod. Dev., Inc. v. TVM Life Sci. Ventures, L.P.*, 2011 WL 549163, at *7 (Del. Ch. Feb. 14, 2011). Thus, the costs of "winding up" a business may or may not be direct depending on the circumstances, including whether closing down "was the only logical step available to [the aggrieved party]." *Id.* And the commercial context in which a contract is made is critical to determine whether particular damages flowing from its breach are direct or consequential. *Concord Plaza Assocs., Inc. v. Honeywell, Inc.*, 1987 WL 8884, at *2 (Del. Super. Ct. Mar. 20, 1987). For these reasons, it made perfect sense

8

for the District Court to let the jury decide such a fact-intensive question. *Accord*

*McNally Wellman Co., a Div. of Boliden Allis, Inc. v. N.Y. State Elec. & Gas Corp.*, 63

F.3d 1188, 1195 (2d Cir. 1995) ("[O]rdinarily the precise demarcation between direct and

incidental or consequential damages is an issue of fact . . . ."); *see* Mem. Order, App.

443–44 (explaining disputes better suited for the jury). The jury's $732,000 award—

which included $212,000 for wind down costs—did not compensate Intuitive Machines

twice for the lost benefit of its bargain. And the evidence the jury received was sufficient

for the jury to award those costs.

\* \* \*

In our system, jury verdicts are entitled to substantial deference. A careful review

of the record shows that the District Court afforded the parties a fair trial free of

evidentiary or legal error. And the evidence presented, viewed in the light most favorable

to the verdict winner, substantiated each aspect of the verdict. We will therefore affirm.

9